IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEVEN D. LEY,

                Plaintiff,          Case No. 3:07 CV 3274

-vs-

                                  MEMORANDUM OPINION

PROCTOR AND GAMBLE
MANURACTURING COMPANY,

                Defendant.

KATZ, J.

This matter is before the Court on Defendant Proctor & Gamble Manufacturing Company's motion to dismiss counts three, four, and eight of Plaintiff Steven D. Ley's complaint. Doc. 8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendant's motion is hereby granted in part and denied in part.

**I. Background**

Plaintiff Steven D. Ley was an employee at Defendant's facility in Lima, Ohio from January 2004 to January 2007. Plaintiff claims that he was terminated as a result of gender discrimination and perceived disability discrimination pursuant to Title VII and federal and state statutes. The complaint contains ten grounds for relief in all, including, in addition to the discrimination claims: discrimination in violation of public policy; breach of employer's duty of safety and health; defamation; negligent hiring, retention, and supervision; intentional infliction of emotional distress; and invasion of privacy. Doc. 1. Defendant has filed a motion to dismiss on the face of the complaint counts three (state public policy tort), four (breach of duty of care for health and safety), and eight (intentional infliction of emotional distress).

**II. Standard of review**

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." To warrant dismissal, "it [must] appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "A district court considering a defendant's motion to dismiss under Rule 12(b)(6) must construe the complaint in the light most favorable to the plaintiff and accept the plaintiff's allegations as true." *Thurman v. Pfizer, Inc.*, 484 F.3d 855 (6th Cir. 2007). However, it is unnecessary for the court to "accept as true legal conclusions or unwarranted factual inferences." *Kottmyer*, 436 F.3d at 688 (citing *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

**III. Discussion**

In his response, Plaintiff has agreed that count four, alleging breach of the employer's duty for the health and safety of its employees, is misplaced. Plaintiff has voluntarily withdrawn that claim, the Court hereby dismisses the same. The Court grants dismissal of count three and denies dismissal of count eight for the reasons discussed below.

**A. Count three: public policy tort**

In *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240 (Ohio 2002), the Ohio Supreme Court held that the remedies provided for in the Family Medical Leave Act are adequate to protect the public policy expressed in the statute, such that a state law claim of wrongful discharge in violation of public policy could not accompany an FMLA claim. The Court found that the jeopardy element of a wrongful discharge claim could not be met because "the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies

2

for its breach," the FMLA. *Wiles*, 96 Ohio St.3d at 244. In other words, "[w]hen viewed as a whole, the FMLA's remedial scheme provides an employee with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation of the FMLA." *Id.* at 245.

> Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. *See Ross v. Stouffer Hotel Co. (Hawaii) Ltd., Inc*. (1994), 76 Haw. 454, 464, 879 P.2d 1037; *Erickson v. Marsh & McLennan Co., Inc.* (1990), 117 N.J. 539, 562, 569 A.2d 793; *Kofoid v. Woodard Hotels, Inc*. (1986), 78 Ore.App. 283, 286-287, 716 P.2d 771, citing *Walsh v. Consol. Freightways* (1977), 278 Ore. 347, 563 P.2d 1205. In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct.

*Wiles*, 96 Ohio St.3d at 244.

Likewise, the Ohio Supreme Court, the prevailing authority on interpretation of state law, *see Johnson v. Fankell*, 520 U.S. 911, 916 (1997), recently held that a claim for wrongful discharge in violation of public policy could not survive alongside a claim for age discrimination pursuant to the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02., .05, .14, or .99. *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311 (Ohio 2007). The *Leininger* court noted that "[i]t is clear that when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy." *Id.* at 317.

At least one court in this District has applied *Leininger* to a claim involving disability discrimination. *Ferguson v. Quebecor World Johnson*, 2008 WL 495612 at *4, n.4 (N.D. Ohio 2008). Even before *Leininger*, Ohio courts were divided on the applicability of *Wiles* to Title VII

3

claims, and the Sixth Circuit and other courts in this District were at least complicit in the dismissal of public policy claims in Title VII cases.

> Since the ruling in *Wiles*, other courts in this district have recognized Ohio public policy claims premised on Title VII violations and containing requests for attorney's fees under Title VII. *See Campolieti*, 1:07CV1417 at *5; *Bernard*, 2006 U.S. Dist. LEXIS 67774 at * 10; *Sanders v. Shred-It-USA, Inc*., Case No. 1:03CV313, *4 (N.D.Ohio Apr. 9, 2003).
>
> Defendants are correct, however, in noting that Ohio courts are chipping away at the availability of the common law claim of wrongful discharge in violation of public policy. For example, Ohio Courts of Appeal have held that Ohio's public policy against discrimination will not be jeopardized if a common law claim of wrongful discharge based on Ohio Rev.Code § 4112.02 is not permitted. *See e.g., Barlowe v. AAAA Int'l Driving*, 2003 Ohio 5748 at 39, 2003 Ohio App. LEXIS 5097 (Ohio Ct.App., Montgomery County Oct. 23, 2003); *Berge v. Columbus Community Cable Access*, 136 Ohio App.3d 281, 736 N.E.2d 517 (Ohio Ct.App., Franklin County 1999).[1]
>
>> [1] Recognizing this trend, the Sixth Circuit has affirmed the dismissal of claims of retaliatory discharge in violation of public policy because both Title VII and Ohio Rev.Code § 4112 provide adequate remedies to protect society's interests. *Carrasco v. NOAMTC, Inc.*, 124 Fed. Appx. 297, 304 (6th Cir.2004). *See also Kaltenmark v. K-Mart, Inc*., 2005 U.S. Dist. LEXIS 21699, *19 (N.D.Ohio Sept. 28, 2005) ("the Court agrees with the majority of Ohio courts that have concluded that Section 4122 is a remedial statute that adequately protects society's interests in preventing employment discrimination [ ... ] the Court concludes that Ohio would not recognize a *Greenley* claim based upon the public policy set forth in either Title VII or O.R.C. § 4112").

*Bostick v. Portage County Public Defender's Office*, 2007 WL 2572180 at *4, n.1 (N.D. Ohio 2007).

In light of the Ohio Supreme Court's holding in *Leininger*, this Court hereby dismisses count three of Plaintiff's complaint for the common law tort of wrongful discharge in violation of public policy. The remedies contained in the federal and state statutes under which the plaintiff seeks to hold the defendant liable contain thorough and fully adequate remedies to repair the

4

wrongs and damages alleged by the plaintiff. There is nothing more a *Greenley* claim could accomplish in this context.

### B. Count eight: intentional infliction of emotional distress

Generally, the tort of intentional infliction of emotional distress requires a plaintiff to demonstrate extreme and outrageous conduct by the defendant which intentionally or recklessly causes severe emotional distress. *See Yeager v. Local Union 20*, 453 N.E.2d 666 (Ohio 1983). Defendant seeks dismissal of this claim because the allegations related to it in Plaintiff's complaint do not rise to the level of extreme and outrageous conduct.

> [A]n employee's termination, even if based on discrimination, does not rise to the level of "extreme and outrageous conduct" without proof of something more. If such were not true, then every discrimination action would simultaneously become a cause of action for the intentional infliction of emotional distress.

*Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

It may be true that an employee's termination from at-will employment, even based on discrimination, alone does not in itself rise to extreme and outrageous conduct, but Plaintiff here is alleging that Defendant did much more than merely fire him. What that "something more" is remains to be fleshed out in discovery. For instance, Plaintiff alleges that Defendant intentionally ignored complaints about fear for his health and safety at the workplace. With more details and specific allegations than are available in the complaint, Plaintiff may still be able to make out a separate claim for emotional distress, however unlikely it appears. It would be premature for the Court at this stage in the litigation to dismiss this claim on its face.

### IV. Conclusion

For the reasons explained herein, Defendant's motion to dismiss is hereby granted as to counts three and four of Plaintiff's complaint and denied as to count eight. (Doc. 8).

5

IT IS SO ORDERED.

                                               s/ *David A. Katz*
                                             DAVID A. KATZ
                                             U. S. DISTRICT JUDGE